UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REBECCA TERWILLIGER, as Natural Parent
and Guardian of DT, an Infant, and
DANA ECHAURI, as Natural Parent
and Guardian of VO, an Infant,

                                        Plaintiffs,

   v.                                         3:12-cv-1750 (TJM/DEP)

SUZANNE McLEOD, Superintendent of Schools
for Union-Endicott Central School District, Individually
and in her Official Capacity, ANN MARIE FOLEY,
Principal of Jennie F. Snapp Middle School,
Individually and in her Official Capacity,
SCOTT ALSTON, Detective for the Endicott Police
Department, and MICHAEL S. HILLA, Juvenile
Officer for the Endicott Police Department,
Individually and in his Official Capacity,

                                        Defendants.
_____

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

**I. INTRODUCTION**

      This action arises in the context of a New York State public school student disciplinary matter. Plaintiffs' Complaint, which does not identify specific causes of action or the nature of the clams asserted, contends that Defendants violated Plaintiffs' rights "including but not limited to" those secured by the Fourth and Fourteenth Amendments to the United States Constitution. Compl. ¶¶ 1, 48.

1

On March 26, 2013, the Court granted Defendants Alston and Hilla's Fed. R. Civ. P. 12(c) motion and dismissed all claims against them. See 04/26/13 Trans., dkt. # 27; 05/21/13 Order, dkt. # 29. Defendants McLeod and Foley ("Defendants") now move for summary judgment pursuant to Fed. R. Civ. P. 56 seeking to dismiss all claims against them. See Motion, dkt. # 36. Plaintiffs, through counsel, have filed a "Notice of Non-Opposition," indicating "that no opposition will be filed to the defendants' summary judgment motion." Not. No Opp., dkt. # 36. For the reasons that follow, Defendants' motion is granted.

## II.  STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011)("Summary judgment is appropriate only if, after drawing all permissible factual inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.")(citing Anemone v. Metro. Transp. Auth., 629 F.3d 97, 113 (2d Cir. 2011)). Even though the instant motion is unopposed, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) ("Even unopposed motions

2

for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (Internal quotation marks omitted).

### III. BACKGROUND

Due to Plaintiffs' failure to file opposition to the pending motion, the supported factual allegations in Defendants' papers are deemed admitted for purposes of this motion. See Fed. R. Civ. P. 56(e)(2); N.D.N.Y. L.R. 7.1(a)(3). These facts indicate that on May 31, 2012, two students at the Jennie F. Snapp Middle School ("JFS") in Endicott, New York,[1] went to Assistant Principal Michael Moran's office and complained that, a few minutes earlier while on the playground, VO, another student, physically attacked one of the two complaining students. The two students also indicated that, a week earlier while engaged in an on-line gaming (X-Box) chat room, they overheard DT and VO discussing plans to "invade" JFS to start a "Columbine" attack at the school. They also heard VO stating that he would soon be getting a shotgun. One of the two expressed fear that he might be a target of VO's plan to invade JFS.

Moran brought the two students to see Defendant Annmarie Foley, Building Principal at JFS, and then investigated the playground altercation. He found a student who had witnessed the altercation and who corroborated the complaining students' allegations that VO had been the initial aggressor.

Foley spoke to the two complaining students who repeated the same information they conveyed to Moran. They also said that VO had indicated that he wanted to stage the "invasion" near the end of the school year, which was coming up in two weeks.

---

[1] The Jennie F. Snapp Middle School is part of the Union-Endicott Central School District.

Additionally, they said that VO and DT frequently called themselves "psychos" or "psychopaths," and each had stated that they often thought about killing others.

Foley, in keeping with the standard practice in the Union-Endicott Central School District ("the District") regarding serious threats of bodily harm, notified the Endicott Police Department and the District's Superintendent of Schools, Defendant Suzanne McLeod. Defendants indicate that once the Endicott Police Department becomes involved in a matter such as the one on May 31, 2012, the standard practice in the District is "for teachers and administrators to step back and allow the police officers to take the lead investigatory role." Def. Stat. Mat. Facts, ¶ 17 (record citations omitted). This practice is based on the belief that "[h]aving teachers or administrators continue to collect facts and question witnesses independent of the police would be considered interference with the ongoing law enforcement investigation." Id.

Within minutes of Foley's call to the Endicott Police Department, two uniformed officers arrived at JFS. The two officers came to the main office and spoke with the two complaining students. The students repeated substantially the same information that they provided to Foley.

Foley also contacted the District's Student Resource Officer ("SRO"), Officer Michael Hilla of the Endicott Police Department. Officer Hilla requested that Endicott Police Department Detective Scott Alston aid in the investigation. Officer Hilla arrived at JFS first, spoke with the two complaining students, and then took formal statements from them. Neither Foley nor any other District employee was directly involved with Officer Hilla's interactions with these two students.

VO and DT were then summoned from their respective classes and placed in

4

separate rooms. Each boy's mother was asked to the come to JFS, and the mothers joined their respective sons before the police began talking with them. District personnel did not question VO or DT before they met with police officers.

Detective Alston questioned VO in the presence of VO's mother and Foley. Officer Hilla separately questioned DT in the presence of DT's mother and JFS Associate Principal Toby Riddleberger. Each student was told he was free to take a break during the questioning. The questioning of each lasted between 45 minutes and one hour. District personnel did not participate in the questioning of either student or have any role in the investigation. At one point, while VO and his mother were taking a break, Foley entered DT's room to observe. While there, she heard DT discuss some of the details of the purported invasion plan, and heard him admit to frequently thinking about killing other people.

After being questioned, VO and DT went home with their mothers.

Principal Foley did not have any lengthy discussions with the police officers before they left JFS after the questioning. She did not ask the police to take any specific action against either boy. She did not ask them to press charges. She does not even recall asking about the potential criminal consequences of their actions. She did not advocate any position with respect to criminal action, neither personally nor on behalf of the District.

Def. Stat. Mat. Facts, ¶ 30 (record citations omitted).

Foley suspended both VO and DT from school for five days, and referred them for a "Superintendent's Hearing" before McLeod to determine whether a longer period of suspension was appropriate.[2] Officer Hilla called Foley the following afternoon, June 1,

---

[2] Although not addressed in Defendants' Statement of Material Facts, the Complaint alleges that the Superintendent's Hearing before McLeod was held on June 7, 2012 and both students were suspended from May 31, 2012 to May 31, 2013.

2012, and told her that both VO and DT would be charged with the crime of "making a terroristic threat" under New York Penal Law § 490.20.[3] The telephone call from Officer Hilla was the first time Foley learned that VO and DT would be charged with a crime. Foley immediately passed that information on to McLeod by email. The email from Foley was the first time McLeod learned that VO or DT would be charged with a crime.

The Complaint alleges that "on October 2, 2012, the plaintiffs commenced an action in New York State Supreme Court in which they sought compensatory damages for the negligent conduct of school official in connection with the [school] disciplinary proceedings [of DT and VO]," Compl. ¶ 30, and that Defendants then "willfully and unlawfully conspired to have criminal charges brought against DT and VO in Family Court." Compl. ¶ 39. However, it is undisputed that

> [t]he police officers decided to press charges without any input from Principal Foley or Superintendent McLeod. Neither Principal Foley nor Superintendent McLeod ever attempted to coerce the police officers into pressing charges. They certainly never discussed the subject of bringing false charges against VO or DT.
>
> The police never consulted Mr. Riddleberger or Mr. Moran before deciding to bring charges against VO and DT.
>
> Other than simply calling the police on May 31 and reporting what she had personally heard from [the two complaining students], Principal Foley did not participate in the police officers' investigation or their decision to charge VO and DT.
>
> Several months later, on October 10, 2012, Principal Foley met with Officer Hilla and answered his questions as he prepared a written statement on her behalf. She answered his questions honestly. She and Officer Hilla did not discuss bringing false charges against VO and DT.

---

[3]Because of VO and DT's ages, they would be charged in New York Family Court Act, Article 3 (juvenile delinquency) proceedings based on the allegations that they each engaged in conduct, which if committed by an adult, would constitute the crime of making a terrorist threat as defined in section 490.20 of the Penal Law of the State of New York, a class D felony.

6

> When Principal Foley met with Officer Hilla on October 10, 2012, she was not yet aware that the plaintiffs had commenced legal action against the District in Broome County Supreme Court earlier that month.

Def. Stat. Mat. Facts, ¶¶ 35-39 (record citations omitted).

On October 15, 2012, New York Family Court Act, Article 3 (juvenile delinquency) proceedings were commenced against VO and DT. These were based on the allegations that VO and DT each engaged in conduct, which if committed by an adult, would constitute the crime of making a terrorist threat as defined in section 490.20 of the Penal Law of the State of New York, a class D felony.

This action followed.

## IV. DISCUSSION

As indicated above, it is difficult to determine the precise legal claims asserted by Plaintiffs. The Court agrees with Defendants that the Complaint can best be interpreted as alleging claims for malicious abuse of process, conspiracy, malicious prosecution, and First Amendment retaliation. The Court will address these claims *seriatim*.

### a. Malicious Abuse of Process

Inasmuch as the Complaint alleges that Defendants conspired with the police to bring juvenile delinquency proceedings against them, it is possible that Plaintiffs assert a claim of malicious abuse of process. "In the criminal context, malicious abuse of process is by definition a denial of procedural due process. . . . Procedural due process forbids the use of legal process for a wrongful purpose." Abreu v. Romero, 2010 WL 4615879, at *8 (S.D.N.Y. Nov. 9, 2010)(citation omitted). To state a claim for the malicious abuse of process, Plaintiffs must prove that Defendants (1) employed regularly issued legal process

7

to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003). The claim fails on all three elements.

First, neither Defendant issued any "legal process" (either civil or criminal) against either VO or DT. Rather, the undisputed facts are that the police made an independent determination to charge VO or DT with acts of juvenile delinquency.

Second, and assuming *arguendo* that either Defendant issued or caused to be issued legal process against either Plaintiff, such process was issued with sufficient justification. As the undisputed facts reveal, there was probable cause to believe that VO and DT engaged in conduct which constituted the crime of making a terrorist threat directed at the school and the children who attended it. As school administrators, Defendants were obligated to contact the police, participate in any police investigation to the extent requested, and to impose proper disciplinary action to deter the threatened conduct from occurring.

Third, there is no evidence of a "collateral objective" by either Defendant. "In New York . . . wrongful [collateral] purposes have included economic harm, extortion, blackmail, and retribution." Ketchuck v. Boyer, No. 3:10-cv-870, 2011 WL 5080404 at *7 (N.D.N.Y. Oct. 25, 2011). Here, no such purpose can be attributed to Defendants. Although the Complaint alleged that all defendants conspired to bring criminal charges "with an eye toward covering up their own incompetent investigation and to avoid liability for depriving the plaintiffs of their right to free, appropriate public education . . .," (Compl. ¶ 4), or "for the purpose of covering up the illegal and unlawful conduct engaged in by the defendants .

8

. .," (id., ¶ 46), those allegations refer to criminal charges which the Defendants did not issue.

For these reasons, any claim of malicious abuse of process against Defendants McLeod and Foley is dismissed.

**b. Conspiracy**

The Complaint alleges that Defendants "conspired" with the police to bring false criminal charges against VO and DT. See Compl. ¶¶1, 39. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).

Plaintiffs' conclusory allegations of a conspiracy are insufficient to make out a plausible claim. See Webb v. Goord, 340 F.3d 105, 110–11 (2d Cir. 2003)(Conclusory allegations of conspiracy are insufficient to plead a claim for relief.). Moreover, the undisputed facts indicate that (1) no agreement existed between Defendants and the police to bring the juvenile delinquency charges against VO and DT, and, (2) there existed probable cause to support the charges. Consequently, any claim of conspiracy against Defendants McLeod and Foley is dismissed.

**c. Malicious Prosecution**

The Complaint potentially asserts claims sounding in malicious prosecution. To satisfy a § 1983 claim for malicious prosecution, Plaintiffs must demonstrate: 1) Defendants commenced or continued criminal proceedings against them; 2) the

9

proceedings were terminated in Plaintiffs' favors; 3) no probable cause existed for the proceedings;  4) Defendants instituted the proceedings with malice; and 5) Plaintiffs suffered a sufficient post-arraignment liberty restraint to implicate their Fourth Amendment rights. Swartz v. Insogna, 704 F.3d 105, 111-12 (2d Cir. 2013).

As indicated above, the undisputed facts indicate the juvenile delinquency proceedings against VO and DT were products of the independent determination of the police, and, thus, were not instituted by Defendants.  Further, and assuming *arguendo* that Defendants could be deemed to have participated in the commencement of these proceedings, there existed probable cause for them.[4]  Therefore, any claim sounding in malicious prosecution against Defendants McLeod and Foley is dismissed.

### d.  First Amendment Retaliation

The Complaint also appears to assert a claim for First Amendment retaliation, alleging that Defendants' decision to institute Family Court Act, Article 3 proceedings against DT and VO was a form of retaliation for Plaintiffs' state court lawsuit against the District. Compl. ¶ 39.

"[T]he First Amendment protects not just the right of access to the courts but also 'the rights to complain to public officials and to seek administrative and judicial relief.'" Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp.2d 364, 372 (E.D.N.Y. 2001)(quoting Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir.1994)).  "The right of access to the courts and to petition the government includes the right to be free from

---

[4] There is no allegation in the Complaint that the juvenile delinquency proceedings ended in VO and DT's favor, and, thus, Plaintiffs have not alleged that a legally plausible malicious prosecution claim existed at the time the Complaint was filed.  However, because Defendants have not addressed this issue and because the possibility exists that the issue ripened since the filing of this action, the Court does not reach this element.

10

retaliation for the exercise of such right." Gusler v. City of Long Beach, 823 F. Supp.2d 98, 133 (E.D.N.Y. 2011)(citation omitted).  To prevail on such a claim, Plaintiffs must prove: (1) they have an interest protected by the First Amendment; (2) Defendants' actions were motivated or substantially caused by Plaintiffs' exercise of that right; and (3) Defendants' actions effectively chilled the exercise of Plaintiffs' First Amendment rights. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (citations omitted).

As discussed above, the undisputed facts indicate that the police made an independent determination to bring Family Court Act, Article 3 proceedings against DT and VO. Thus, there is no casual connection between Plaintiffs' state court lawsuit against the District and the institution of the Article 3 proceedings.  Further, there existed probable cause for the Article 3 proceedings, thus providing a justifiable basis for the commencement of the proceedings independent of consideration of Plaintiffs' state court lawsuit.  Moreover, the record is devoid of any indication that Plaintiffs' rights to access the courts or to petition the Government for the redress of grievances was chilled.  Therefore, to the extent a First Amendment retaliation claims is alleged in the Complaint, it is dismissed.

### e. Other Claims

The Court fails to decipher from the Complaint any other plausible claims against Defendants whether in their individual or official capacities. Thus, to the extent any other claims are intended, they too are dismissed.

### V. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [dkt.

# 36] is **GRANTED**. All claims against Defendants McLeod and Foley are dismissed with prejudice. The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

Dated: September 12, 2013